```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

CUSTOM ADVERTISING DISPLAYS,   }
INC.                           }
                               }
     Plaintiff,                }    CIVIL ACTION NO.
                               }    09-AR-2621-S
v.                             }
                               }
ARRAY RETAIL SOLUTIONS, INC.,  }
et al.,                        }
                               }
     Defendants.               }
```

**<u>MEMORANDUM OPINION</u>**

Before the court is the motion of defendants, Array Retail Solutions, Inc., et al. (collectively, "ARRAY"), for summary judgment as to all claims brought by plaintiff, Custom Advertising Displays, Inc. ("Custom"). This action arises from the alleged breach of a settlement agreement that was designed to quiet previous litigation between the parties. Custom brings claims against ARRAY under the following theories: (1) conversion; (2) fraudulent misrepresentation; (3) deceit; (4) suppression; (5) unjust enrichment; and (6) breach of contract. Custom concedes that summary judgment is due to be granted as to its first three claims. ARRAY's motion will be denied only as to Custom's claim for breach of contract and granted as to all other claims. All facts are viewed in the light most favorable to Custom.

### FACTS

Array Retail Solutions, Inc. ("Array, Inc.") is a company that, prior to the sale of its assets, designed and produced point

of purchase product displays.  Custom is a company that designs and markets point of purchase displays, like those manufactured by Array, Inc.  Custom bought the McKee and Nafco accounts from Array Inc.'s predecessor, and acted as a broker between the manufacturers and purchasers of the displays in exchange for monthly commissions based on sales.  In 2002, Array, Inc. ceased paying Custom the monthly commissions it received from the McKee and Nafco accounts, whereupon Custom sued Array, Inc. and affiliated individual defendants in 2004.  The parties to that earlier case successfully mediated it in 2005, and entered into a written settlement agreement under which Custom would receive a one-time lump sum, followed by monthly payments based on a percentage of Array, Inc.'s sales to McKee and Nafco until 2011. The settlement agreement bound Array, Inc., its parent companies, William Hewgley, Jr., and Rick Davis (together, "ARRAY").

Under the settlement agreement, ARRAY and Custom (referred to in the agreement as "CAD") agreed, *inter alia*, to the following terms:

>     (a)   ARRAY will pay CAD the sum of Fifty-One Thousand, Four Hundred and Fifty and No/100 Dollars ($51,450.00) by not later than June 2, 2005. . . .
>
>     (b)   For the period of June 1, 2005, through May 31, 2006, ARRAY will pay CAD on a monthly basis a sum equal to 3½% of all sales of Little Debbie and Sunbelt product lines for McKee Foods, and 3½% of all sales of Nafco Division of Tarkett product lines for said period.

>   (c)   For the period of June 1, 2006 through May 31, 2007, ARRAY will pay CAD on a monthly basis a sum equal to 3% of the sales for the accounts referenced in paragraph (b).
>
>   (d)   For the period of June 1, 2007 through May 31, 2011, ARRAY will pay CAD on a monthly basis a sum equal to 2½% of the sales for the accounts referenced in paragraph (b).
>
>   (e)   The periodic payments referenced in paragraphs (b) through (d) shall be made by the end of the month following receipt of payment by ARRAY from McKee and Nafco.

(Doc. 21-1 at 1.)  The agreement also provided that, upon default, ARRAY would be obligated to pay Custom $700,000 in liquidated damages, less any amount previously paid pursuant to the agreement. The agreement was silent, unless by implication, as to whether ARRAY could sell the Nafco and McKee accounts to third parties, and whether ARRAY's obligations to make monthly payments would continue after any such sale.  ARRAY made the lump sum payment to Custom and made the agreed-upon monthly payments through September 30, 2009.

On September 18, 2009, Array, Inc. entered into an asset purchase agreement with American Display and Fixture, LLC ("ADF"), whereby ADF purchased all of Array, Inc.'s assets, including equipment, inventory, accounts, and receivables. ADF did not assume any of Array, Inc.'s or ARRAY's liabilities, and the purchase agreement between ADF and Array, Inc., carefully and specifically excluded any assumption by ADF of any obligation by ARRAY to Custom under the settlement agreement.  After Array, Inc. sold its assets to ADF, McKee and Nafco no longer bought displays from Array, Inc.,

3

and all payments were made to ADF.  While working as a sales manager for Array, Inc., Rick Davis ("Davis") handled the McKee and Nafco accounts.  Davis was involved with the asset sale to ADF, is now a shareholder of ADF, and continues to handle the McKee and Nafco accounts for ADF.

On June 23, 2009, prior to the asset sale between Array, Inc. and ADF, Custom requested information from Davis regarding any possible sale.  Davis did not respond.  On August 7, 2009, Custom sent a letter to Array, Inc., providing notice that any asset sale that did not transfer the obligations arising from the settlement agreement would be considered a default, and that Custom would look to Davis and the other ARRAY entities individually to pay liquidated damages.  On September 21, and again on October 8, 2009, Custom emailed Davis to inquire about future payments and the effect that any potential asset sale would have upon them.  Davis did not respond to these inquiries.  The first time that Custom was informed about ADF's purchase of Array, Inc. was on October 14, 2009, when Custom received a letter stating that Array, Inc.'s assets, including the Nafco and McKee accounts, had been sold to ADF.  Attached to the letter was a check to Custom, which Array, Inc. contends represented its final payment to Custom.  It was not designated "paid in full" and was cashed.

## DISCUSSION

A federal court sitting in diversity, as is this court,

4

applies the substantive law of the state in which it sits to any state law claims. *E.g. Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).  Accordingly, this court will apply Alabama law to each of Custom's claims.

**Breach of Contract**

Alabama courts hold that a settlement agreement is a contract and is to be construed like any other contract. *Jones v. Bullington,* 401 So. 2d 740, 741 (Ala. 1981).  Under Alabama law:

> Whether a contract is ambiguous is a question of law for the trial court to determine.  In interpreting a contract, the words of the agreement will be given their ordinary meaning. An instrument is unambiguous if only one reasonable meaning clearly emerges.  If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment.  However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.

*Reeves Cedarhurst Dev. Corp. v. First Amfed Corp.,* 607 So. 2d 184, 186-187 (Ala. 1992) (internal citations and punctuation omitted).

Here, the settlement agreement contains no express language as to whether ARRAY's obligations as to the Nafco and McKee accounts continued after any sale.  Neither did it preclude such a sale.  I did provide for liquidated damages in the event of default, whatever constituted a default.  The portions of the agreement pertaining to the duration of payments are susceptible to

5

inconsistent interpretations.  Given that the agreement calls for payments based on "all sales" through May 31, 2011, Custom's contention that ARRAY was obligated to pay regardless of whether it sold the accounts is reasonable.  Likewise, given that the agreement specifies that said payments "shall be made by the end of the month following receipt of payment by ARRAY from McKee and Nafco," ARRAY's contention that their obligations to pay Custom ceased upon sale of these accounts is also reasonable.  Because the settlement agreement is ambiguous, summary judgment would be inappropriate under *Reeves*.  Accordingly, ARRAY's motion for summary judgment will be denied as to this claim.

**Unjust Enrichment**

To prevail on a claim for unjust enrichment, a plaintiff must show that the "defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Scrushy v. Tucker,* 955 So. 2d 988, 1011 (Ala. 2006)(emphasis omitted).  Under Alabama law, "claims of both an express and an implied contract on the same subject matter are generally incompatible." *Kennedy v. Polar-BEK & Baker Wildwood P'ship,* 682 So. 2d 443, 447 (Ala. 1996).

Custom's claim for unjust enrichment fails as a matter of law for at least two reasons.  First, there is no evidence that ARRAY received any payments from McKee or Nafco after the sale to ADF.

Said payments were made to ADF, a non-party to this suit. To the extent that Custom attempts to mount a claim for unjust enrichment against Davis individually, because he was individually bound by the settlement agreement and is now a shareholder of ADF, it fails. "[A] corporation is a distinct entity to be considered apart from the individuals who operate it, and [its] obligations and transactions are to be considered separately from those of the corporation's stockholders." *Wright v. Alan Mills, Inc.* 567 So. 2d 1318, 1319 (Ala. 1990).

Custom's unjust enrichment claim also fails because the subject matter of said claim, the Nafco and McKee payments, is covered by an express contract. The settlement agreement, whatever intent it manifests, offers an adequate remedy at law. There is no need for Custom to rely upon a theory of implied contract. Accordingly, ARRAY's motion for summary judgment will be granted as to Custom's claim for unjust enrichment.

**Suppression**

The Alabama legislature has provided:

> Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

Ala. Code § 6-5-102 (1975). Custom concedes, via the deposition testimony of its corporate representative, that ARRAY did not suppress any information while negotiating the 2005 settlement.

However, Custom, in response to ARRAY's motion for summary judgment, contends that ARRAY's failure to respond to its inquiries regarding the 2009 asset sale constituted fraudulent suppression. Because there was no confidential relationship between Custom and ARRAY, Custom must rely upon "the particular circumstances of the case" to establish that ARRAY was obligated to disclose in advance its sale to ADF.

The elements of fraudulent suppression are: "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act [or refrain from acting]; (4) action [or inaction] by the plaintiff to his or her injury." *Freightliner, LLC v. Whatley Contract Carriers, LLC,* 932 So. 2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan,* 682 So. 2d 61, 63 (Ala. 1996)); *State Farm Fire and Cas. Co. v. Owen,* 729 So. 2d 834, 837 (Ala. 1998).

Whether a defendant has a duty to disclose information is a question of law to be determined by the trial court if the facts material to the question are undisputed. *Owen,* 729 So. 2d at 839-40. In determining whether a duty exists, Alabama courts apply the following factors: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."

*Armstrong Bus. Servs., Inc. v. AmSouth Bank,* 817 So. 2d 665, 676-77 (Ala. 2001).

Whether a duty exists in non-confidential relationships is a mixed question of law and fact, and "[d]etermining whether there is a duty necessarily requires analyzing the factual background of the case." *Owen,* 729 So. 2d at 839.

> The judge should decide whether, assuming as truth all of the plaintiff's factual assertions, they are sufficient to give rise to a legal duty. . . . If the judge finds that the circumstances as alleged would be enough to create a legal duty, then he should instruct the jury as to what that duty would be if these circumstances did exist. The jury then decides whether those circumstances indeed existed.

*Id.* at 840. Courts applying Alabama law have addressed the duty to disclose in non-confidential relationships between buyers and sellers of business interests. However, those cases have typically focused on the duty as between buyer and seller before any sales agreement is entered into, and not on any obligation to disclose a potential breach thereafter. *See, e.g., Kaye v. Pawnee Constr. Co., Inc.,* 680 F.2d 1360 (11th Cir. 1982)(discussing the duty between a bank and a company assuming the bank's collateral position); *Gary v. Kirkland,* 514 So. 2d 970 (Ala. 1987)(discussing a convenience store owner's duty to the party purchasing the store). Nonetheless, the court will analyze the relevant factors in turn.

Here, the parties' relationship reflects that they were on

9

equal footing. ARRAY and Custom were involved in an arm's length business relationship, and both parties were represented by counsel when entering into the settlement agreement. There is no allegation of suppression as an inducement to Custom to enter the settlement agreement, and Custom does not seek rescission. Clearly, ARRAY's knowledge of any plans of a sale to ADF was superior to that of Custom, but "[s]uperior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information." *Owen,* 729 So. 2d at 843. While Custom may have had concerns about ARRAY's possible sale to ADF, as evidenced by its requests for information and the liquidated damages provision, Custom's best opportunity to deal with a potential sale was while negotiating the settlement agreement. Whether it would continue to receive payments from ARRAY after a sale was obviously information valuable, if not available, to Custom. That was probably the rationale for the liquidated damages provision.

ARRAY remained silent in the face of Custom's requests for information. It did not actively misrepresent its intentions, either before or after execution of the settlement agreement. Silence can constitute suppression, as a matter of law, only if there is an obligation to disclose. On these undisputed facts ARRAY was under no duty to disclose that it was contemplating action that arguably might constitute breach of contract. A claim for breach of contract is Custom's only remedy.

ARRAY contends that, even if it had a duty to respond to Custom's inquiries, Custom cannot establish the remaining *prima facie* requirements of fraudulent suppression.  ARRAY maintains that its non-response did not induce Custom to remain inactive and that, in any event, Custom did not suffer damages as a result of ARRAY's inaction.  Specifically, ARRAY points to Custom's threat to initiate a lawsuit against all parties bound by the settlement should ARRAY cease making monthly payments.  Because this is precisely what happened, ARRAY maintains that Custom would have suffered the same damages with or without the requested information.  Had ARRAY informed Custom of its intent to sell, Custom may have acted in any number of ways to make the deal less attractive to ARRAY and/or ADF.  Custom's actual damages, if any, may be difficult to measure, which is the reason for the liquidated damages provision.

Because Custom did not have a duty to disclose information to Custom, ARRAY's motion for summary judgment will be granted as to Custom's claim for fraudulent suppression.

## CONCLUSION

Consistent with the preceding opinion, ARRAY's motion for summary judgment will be granted in part and denied in part.  Custom having conceded its claims for conversion, deceit, and fraudulent misrepresentation, ARRAY's motion for summary judgment will be granted as to said claims.  It will also be granted as to

Custom's claims for unjust enrichment and fraudulent suppression. ARRAY's motion will be denied as to Custom's claim for breach of contract.  A separate order effectuating this opinion will be entered.

    DONE this 17th day of March, 2011.

                                      /s/ William M. Acker, Jr.
                                      WILLIAM M. ACKER, JR.
                                      UNITED STATES DISTRICT JUDGE